Our next case for argument today is United States v. Bailon Good morning, Your Honor. May it please the Court? My name is Gregory Mitchell and I represent Mr. Mario Olivas Bailon. Judge, Your Honor, this case is pretty straightforward. As pointed out in the brief, there's, and the government recognizes, there's basically two issues here in terms of the Miranda warning. The first is, was he properly advised of his rights? And this is a case where, unlike you have a he said, she said sort of scenario where one person says one thing, another person says another, you have a video recording. The difference in this particular case, though, is that the defendant in this particular case does not have English as his primary language, but is Spanish speaking. And what happens in this case is really the issue is number two, is did he make a knowing and voluntary waiver of those rights? And that's the real question here, is what does it mean to knowingly waive the rights that you have I don't understand how that's the question here. The district court asked and answered that question. Why isn't the question for us whether the district court made a clear error? And that's it, Judge. I believe that the district court relied upon in terms of the issue of the burden. And as I pointed out in my brief, I think at page 21, is that the district courts concluded that Mr. Olivas had been made aware of his Miranda rights and he was now required to make a clear and unambiguous statement in order to invoke them as a custodial interrogation. And I cannot find that anywhere in the law where now the burden is on the defendant to show that he now has to request it. But the district court found, and this is videotaped, what the record shows is that that he read out loud. How do you get around a written waiver in Spanish? I don't understand you to be arguing he can't read Spanish. No, not at all. And again, looking at the video, what you have is that he's arrested at approximately 1 o'clock and he's put into a van and he's left there for about an hour and he's questioned at that point. And that was suppressed. Exactly. But again, the test is the totality of the circumstance. So at first, you put him in a van and he's there and he's questioned in Spanish. With no Miranda rights. With no Miranda, and the court suppresses that. That doesn't necessarily change his psychological environment, even though that statement at that time, I'm not asking, and I filed that motion to suppress. The question becomes, Judge, is that, okay, so now we have this issue of two hours later, he's brought into the DEA office in Chicago. With different agents. With different agents, same investigation. And then he is shown a form, which is a waiver of rights form. And he is asked on the form to acknowledge the existence of each and every right. But as you look at the video, there is no discussion whatsoever about the waiver provision. That you know you have these rights, and are you now agreeing? And do you understand that by continuing to talk with us, you are abandoning those rights? Do you truly comprehend and understand? That's on the form. I understand. And he signs the form. But in the video, there is no discussion. There is no even indication, and there's no initialization where he initials every other right that he understands and abandons it by signing the waiver. And, in fact, the agents who go over that form with him essentially skip that portion. They read the first top portion, and then they have him sign the bottom, where this portion that talks about waiver and abandoning the rights are simply ignored throughout the entire process. And so that's the real question. Okay, so why would the agent simply have him selectively sign certain portions of the waiver form and then ignore the part where he understands in Spanish what waiving and abandoning the rights means? That's the real issue at this two-hour level. And what I point out, Judge, in the case is that even though the Seventh Circuit hasn't clearly defined what knowing and voluntary of waivers means, there's other circuits who have. In fact, the Second Circuit defines it this way. Knowingly means with full awareness of the nature of the rights being abandoned and the consequences of the abandonment. That's what that means. And there is no indication in this record that this issue of the waiver part and abandoning the rights that you just initialed was ever understood or even explained to Mr. Bellion. And given his background and given the circumstances, there's no way to draw the conclusion. And when the district court says he was now required to make a clear and ambiguous statement in order to invoke them during custodial interrogation, given the context, that's just clear error. There's no indication in that regard that any court has required a person, given this scenario of what you see here on the video, that he now has to take an affirmative action to say, look, I want to have an attorney. And that's the distinction when the district court relies on Chabaz. Chabaz makes a claim that he wanted to talk to an attorney, that he was asking it. And the judge said, well, given the testimony of the agents, I don't find that testimony credible. That's not what's in this case at all. There's no credibility finding with respect to Mr. Bellion in this case. It's just simply a conclusion that the judge decided looking at the video and looking at the reaction and essentially looking at Mr. Bellion's background, that he must have understood what it meant to waive his right to have an attorney, that he must have understood the consequences of him continuing to talk, that he must have understood all of this. And there's simply no explanation, and there's nothing in the record to indicate that. The concern here is whether or not the knowledge that the judge is simply inferring that he has can somehow can be fairly deduced from the record. And there isn't any. There is nothing to indicate that at all. In fact, what you have is that when you look at the Seventh Circuit, they talked about this, the court has talked about this in Sonnenberg in a bit, when it says that we are looking for the person to have the understanding and the appreciation of what it is they're waiving. Was there any coercive government conduct here? Well, that started the second argument. The reason I ask that question is oftentimes defendants come into, especially the DEA, and they're arrested and they want to cooperate, and they sort of make this half attempt to cooperate. So their waiver and their conversations with the DEA are certainly voluntary, and there's no coercive police activity to solicit the statement from the defendant. But the statement often doesn't work out the way the defendant had hoped it would work out, particularly if the defendant is not completely truthful with the DEA. And I'm just wondering what more should the DEA have done here if their conduct in eliciting your client's statement was not coercive in any way? Well, again, as part two of what I pointed out in my brief, I don't think it was that they were non-coercive in any way. And, again, what I considered was clear from the district court was the district court looked as almost as if this was an elements test that you look at, was there a promise made? And if there was no promise, then it was voluntary. And was there a direct threat made? And if there was no direct threat, then it wasn't coercive. The totality of the circumstances test, from where I read the cases, is that you have to look at the entire context of what is going on here. And in this particular case, they know his status. They know from the record and what he says that I don't know anything about the drugs. And immediately the question becomes about children and deportation and legal drugs. And given the context that he's wearing his work uniform, he says I was off work, I just came off lunch, this person picked me up, and everything that seemed to be verified, to talk about and start turning about my kids and my wife and searching my house for drugs and other things, and he's saying that you can do that, there's nothing going on. To me, that's the type of coerciveness that this court has recognized. And, in fact, I think the court specifically talks about that although you can do certain things, but you have to show that it's not a threat where a person's will is overborne. And given the context of this individual, given where he stands here in his life as a working person with no criminal history whatsoever, taking care of his kids, that specifically, in the context of what occurred here, his free will was overborne. And so I believe there was coercion in this case that violated the Fourth Amendment. Thank you. Thank you, Mr. Mitchell. Ms. Partham. May it please the Court, Michelle Partham for the United States. The district court correctly held that the defendant's Miranda waiver here was both knowing and voluntary. As Judge Saney pointed out, the defendant had a written waiver form in his native language of Spanish. He read out loud each of five statements of rights. And while the defendant argues that he was rushed through the portion of the form that had the waiver, not only did that have a bold-heading waiver of rights, but one of the five rights that he read aloud was, anything you say can be used against you in a court of law. That is a notification not just of a right, but of the consequences of waiving that right. He read that right aloud in Spanish. He initialed next to it, as well as the other four rights that he read aloud and initialed. And below the bold waiver of rights heading, he signed his full name. And the videotape of the- Spanish translation of the Miranda rules. That's correct, Your Honor. The judicial conference has had problems with translated forms before. I'm happy to hear that there doesn't seem to be one with this form. That's correct. And the district court correctly found that the defendant appeared to understand the rights that he read. He didn't ask questions or show confusion, whereas elsewhere in the videotaped interview, if he was confused about something, he was willing to make that clear. And the district court also correctly found that immediately after waiving those rights, he began answering questions and cooperating. The district court also correctly held that the totality of the circumstances show that his post-waiver confession was voluntary. First, the written waiver itself is strong evidence that the subsequent statements were voluntary. Second, the record shows that the defendant confessed not in response to any challenged statement by officers, but in response to being confronted with the evidence against him. Throughout the interview, despite challenged statements, defendant consistently denied owning a gun, consistently denied involvement in or knowledge of the drug deal that was the subject of the agent's focus. It was only when an agent said they would dust the firearm for fingerprints that the defendant immediately admitted that he touched it. And watching that videotaped interview, the cause and effect there is just very apparent. He waits not a second to admit after he was told that the firearm would be dusted for fingerprints, that yes, honestly, he did touch it. And then after agents found a picture of the firearm in his cell phone, defendant gave additional information about the firearm. So the video shows that what prompted his confessions was not any statement about his family or his immigration status. It was the evidence. Third, defendant's conduct was cooperative throughout. He agreed to a search of his cell phone, and the district court correctly found that he consciously expressed his willingness to cooperate in exchange for leniency, asking the agents, how can you help me? This court has found in such cases as United States v. Brown, that when a defendant seeks to strike a deal with agents, that is evidence of a voluntary, rational exercise of free will. And that's what happened here. Fourth, the defendant's demeanor. He was calm and relaxed throughout the interview. You can see in the video he's leaning back in his chair. He resisted agents' premises throughout the interview when he disagreed with them and stuck to his story. In the kind of key moments of the interview, when he's first admitting that he touched the gun, in fact, it's interesting, that is one of the most willful moments of the interview. The defendant, in that moment, an agent attempts to interrupt him. He puts his hand up. He says, hold on. He wants to tell his story, and he's fully within his willpower doing it in that moment. A few moments later, he, an agent, says something he disagrees with. He says, no, no, no, no, no. So in that moment, he is showing his will. This is totally inconsistent with someone whose will has been crushed by official power. Fourth, the nature of the challenge statements. They are a very minor amount of time. In an hour-long interview, the statements that are challenged here comprise altogether less than a minute of that time. They also are truthful statements about the natural consequences of the fact that the defendant was here as an undocumented immigrant. In cases such as United States v. Miller, this court has held that there is no coercion in informing a defendant of the natural consequences of a decision not to speak with law enforcement or the natural consequences of the very serious charges for which they are being investigated. Fifth, the circumstances of the interview. This was just an hour long, middle of the day, and a largely cordial tone. And then, finally, the defendant's personal characteristics. He's 35 years old, well-educated, in good condition, no drug or alcohol use. So, in summary, the totality of the circumstances in this interview more than support the district court's determination that both the waiver of the Miranda rights was knowing and voluntary, and the subsequent statements were voluntary and were not coerced. If the court has no further questions, the government will conclude. Do you agree that our opinion in Meza-Rodriguez addresses the mootness issue? I do, Your Honor. Okay. Thank you. Thank you, counsel. Anything further, Mr. Mitchell? No, Your Honor. Mr. Mitchell, we appreciate your willingness to accept the appointment in this case.